1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHILADELPHIA INDEMNITY
INSURANCE COMPANY, et al.,

          Plaintiffs,

      v.

SIMPLEXGRINNELL LP,

          Defendant.
_____/

No. C 12-0567 PJH

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

    Defendant's motion for summary judgment came on for hearing before this court on March 6, 2013. Plaintiff Philadelphia Indemnity Insurance Company appeared by its counsel Carl Guerrieri; plaintiff Mid-Century Insurance Company appeared by its counsel Dean A. Alper; and defendant SimplexGrinnell LP appeared by its counsel Randall Haimovici. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS defendant's motion as follows and for the reasons stated at the hearing.

**BACKGROUND**

    This is an insurance subrogation case in which the plaintiffs seek compensation for payment on property damage claims. University of Sports, LLC ("UOS") leased premises ("the UOS building"), which since 2008 has been owned by El Capitan Investments, LLC ("El Capitan"). Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia") issued a policy of casualty insurance to UOS, and plaintiff Mid-Century Insurance Company ("Mid-Century") issued a policy of casualty insurance El Capitan.

United States District Court

For the Northern District of California

1    The policies insured UOS and El Capitan from loss due to water, fire, and other

2    catastrophes to their businesses, business personal property, real property, and other

3    resulting damages as described in the policies.  The policies also provided that in the event

4    of an insured loss, the insurers would be subrogated to any rights that the insureds might

5    have against a third party who was responsible for the loss.

6    In 2002, the UOS building was owned by Bishop & Bishop Land LLC ("Bishop &

7    Bishop"), which retained Zak's Enterprises ("Zak's") to serve as general contractor on a

8    project to remodel the building.  The remodeling project, which was paid for by Bishop &

9    Bishop, included the construction of an indoor soccer field as part of the premises to be

10   leased to UOS.  As part of the deal, William Bishop (a member of Bishop & Bishop) and

11   Chris Dzulak (owner of Zak's) became part owners of UOS.

12    According to the testimony of Mr. Dzulak, Bishop & Bishop hired an architect to

13   prepare the plans, and to coordinate with the city and the structural engineer.  Bishop &

14   Bishop did not contract directly with any of the subcontractors.  Mr. Dzulak oversaw the

15   remodeling project on a daily basis, and Zak's entered into a contract with defendant

16   SimplexGrinnell LP ("Simplex") for work on the fire sprinkler system, to include expanding

17   the existing sprinkler system and installing two-piece head guards to protect the indoor

18   soccer facility's sprinkler heads from soccer balls.

19    Simplex installed approximately 200 sprinkler head guards at the building, including

20   above the soccer field.  Simplex sells one and two-piece head guards; two-piece head

21   guards are stronger than one-piece guards.  According to the product literature, both the

22   1-piece and the 2-piece head guards "are designed to provide protection against low level

23   impacts to the sprinkler head."  The 2-piece design "features a cage and clamping base

24   plate" which can provide "additional protection for sprinklers that may experience greater

25   opportunity for repeated abuse."

26    Mr. Dzulak testified that he had a strong understanding of sprinkler systems,

27   although he always hired a subcontractor to do the installation.  During the remodeling of

28   the UOS building, Mr. Dzulak visited two or three other indoor soccer facilities to determine

United States District Court

For the Northern District of California

1   how they designed their facilities and protected their sprinkler systems.  The facilities he

2   toured used sprinkler head guards to protect their sprinkler systems from soccer balls.  He

3   did not see any that were protected with nets.  Mr. Dzulak asserts that Simplex told him

4   that the sprinkler head guards they installed would adequately protect the sprinkler heads

5   from flying soccer balls.

6          On July 10, 2010, more than two years after the UOS building had been sold to El

7   Capitan, a soccer ball struck one of the sprinkler heads above the soccer field.  Although

8   the sprinkler head was protected by a two-piece head guard, it broke from the impact and

9   discharged a large amount of water onto the field.

10          Aaron Locks, who is a former owner and former president of UOS, testified that he

11   was shocked to learn of the incident.  Mr. Locks referred to the soccer ball kick at issue as

12   a "six-in-one-million" type of a shot, because of its power and because of the way it must

13   have ricocheted off the ceiling in order to damage the sprinkler head in the way that it did.

14          UOS and El Capitan filed claims with the plaintiff insurers.  Philadelphia paid

15   $351,413.28 on the claim submitted by UOS, and Mid-Century paid $699,063.83 on the

16   claim submitted by El Capitan.

17          In February 2012, Philadelphia and Mid-Century filed the present action seeking

18   recovery of the amounts they had paid their insureds.  In the original complaint, plaintiffs

19   alleged a single cause of action for negligence.  Simplex moved for judgment on the

20   pleadings, arguing that plaintiffs had failed to allege any duty that could give rise to a claim

21   of negligence.  The court granted the motion, with leave to amend.  Plaintiffs filed the first

22   amended complaint ("FAC") on May 16, 2012.

23          In the FAC, plaintiffs again allege a single cause of action, for negligence.  They

24   assert that Simplex negligently "designed, constructed, supervised, inspected,

25   manufactured, installed, assembled and/or built" the sprinkler system and its component

26   parts; that Simplex owed a legal duty to exercise reasonable care in their "design,

27   construction, supervision, inspection, manufacture, installation, assembly and/or building"

28   of the sprinkler system; that Simplex breached this duty by failing to "design, construct,

United States District Court

For the Northern District of California

1   supervise, inspect, manufacture, install, assemble and/or build" the sprinkler system and its

2   component parts in a "reasonably safe and prudent manner so as not to cause injury or

3   property damage; and that Simplex's breach of these duties was the direct and/or

4   proximate cause of the damages alleged in the complaint. See FAC ¶¶ 32-36.

5        Simplex now seeks summary judgment, arguing that plaintiffs cannot establish that

6   Simplex owed them an independent tort duty.[1]

7                                    **DISCUSSION**

8   A.    Legal Standard

9        A party may move for summary judgment on a "claim or defense" or "part of . . . a

10   claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is

11   no genuine dispute as to any material fact and the moving party is entitled to judgment as a

12   matter of law. Id.

13        A party seeking summary judgment bears the initial burden of informing the court of

14   the basis for its motion, and of identifying those portions of the pleadings and discovery

15   responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp.

16   v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome

17   of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a

18   material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a

19   verdict for the nonmoving party. Id.

20        Where the moving party will have the burden of proof at trial, it must affirmatively

21   demonstrate that no reasonable trier of fact could find other than for the moving party.

22   Soremekun v.Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where

23   the nonmoving party will bear the burden of proof at trial, the moving party can prevail

24   merely by pointing out to the district court that there is an absence of evidence to support

25   the nonmoving party's case. Celotex, 477 U.S. at 324-25. If the moving party meets its

26

27        [1] Philadelphia filed an opposition to the motion, in which Mid-Century filed a notice of

28   joinder. Mid-Century filed a separate opposition and cross-motion, but subsequently withdrew
     the cross-motion.

United States District Court

For the Northern District of California

1   initial burden, the opposing party must then set out specific facts showing a genuine issue

2   for trial in order to defeat the motion.  Anderson, 477 U.S. at 250; see also Fed. R. Civ. P.

3   56(c), (e).

4       When deciding a summary judgment motion, a court must view the evidence in the

5   light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

6   Anderson, 477 U.S. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

7   B.      Defendant's Motion

8       Simplex argues that summary judgment should be granted on the negligence claim.

9   Simplex asserts that it owed plaintiffs no independent tort duty, and the public policy factors

10  make clear that it owed plaintiffs no independent tort duty; and also contends that the

11  "completed and accepted" doctrine bars plaintiffs' claims.

12      The elements of a cause of action for negligence are a duty to exercise due care,

13  breach of that duty, causation, and damages.  See Merrill v. Navegar, Inc., 26 Cal. 4th 465,

14  500 (2001).  "The threshold element of a cause of action for negligence is the existence of

15  a duty to use due care toward an interest of another that enjoys legal protection against

16  unintentional invasion."  Bily v. Arthur Young & Co., 3 Cal. 4th 370, 397 (1992); see also

17  Waseloh Family Ltd. Partnership v. K.L. Wessel Const. Co., 125 Cal. App. 4th 152, 163

18  (2004).  Whether this element has been established in a particular case is a question of law

19  to be resolved by the court.  Bily, 3 Cal. 4th at 397.

20      Simplex argues that it owed plaintiffs no independent tort duty, because any duty

21  arose solely from its contract with Zak's,[2] and that plaintiffs cannot recover in tort for

22  Simplex's alleged negligence in performing the contract.  Simplex contends that this is not

23  a construction defect case, and that its negligence did not cause the six-in-one-million

24  soccer kick – and that at best plaintiffs can argue that Simplex somehow failed to prevent

25  the damage.  However, Simplex asserts, the common law does not impose such a duty.

26

27      [2]  The actual contract between Zak's and Simplex is not in evidence before the court,
28  although the parties have attached a copy of what Mr. Dzulak identified at his deposition as
    the proposal submitted by Simplex to Zak's for the work on the fire sprinkler system.

United States District Court

For the Northern District of California

1     Contract and tort are different branches of law.  Contract law exists to enforce legally

2  binding agreements between parties; tort law is designed to vindicate social policy.  Applied

3  Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 515 (1994); Foley v. Interactive

4  Data Corp., 47 Cal. 3d 654, 683 (1988).  Courts generally enforce the breach of a

5  contractual promise through contract law, except when the actions that constitute the

6  breach also violate a social policy that merits the imposition of tort remedies.  Erlich v.

7  Menezes, 21 Cal. 4th 543, 552 (1999) (quoting Freeman & Mills, Inc. v. Belcher Oil Co., 11

8  Cal. 4th 85, 107 (1995)).  That is, conduct amounting to a breach of contract becomes

9  tortious only when it also violates an independent duty arising from principles of tort law.

10  Freeman, 11 Cal. 4th at 95; Applied Equip., 7 Cal. 4th at 516.

11     Thus, tort liability has been imposed in contract cases in certain limited contexts

12  such as where the breach causes physical injury, breach of the covenant of good faith and

13  fair dealing in insurance contracts, wrongful termination in violation of public policy, or

14  fraudulent inducement of a contract.  Erlich, 21 Cal. 4th at 551-52.  However, "[i]f every

15  negligent breach of contract gives rise to tort damages the limitation would be meaningless,

16  as would the statutory distinction between tort and contract remedies."  Robinson

17  Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 990 (2004) (citing Erlich, 21 Cal. 4th at

18  553-54).

19     For example, California courts have found an independent duty, based on public

20  policy considerations, in cases where negligent construction causes damage.  See, e.g.,

21  Sabella v. Wisler, 59 Cal. 2d 21, 28-29 (1963) (builder liable in negligence where he built

22  plaintiff's house on soil that was unable to support the weight of the house, which led to

23  structural damage); Stewart v. Cox, 55 Cal. 2d 857, 863-65 (1961) (subcontractor liable in

24  negligence where it negligently applied concrete to inside of swimming pool, thereby

25  causing release of water that damaged the pool, lot, and house).

26     On the other hand, where a plaintiff alleges that the defendant negligently performed

27  its contract by failing to protect against something that later caused damage, no tort duty

28  exists.  See Valenzuela v. ADT Sec. Servs., Inc., 820 F.Supp. 2d 1061, 1071-72 (C.D. Cal.

United States District Court
For the Northern District of California

1  2001) (defendant ADT did not owe plaintiffs a tort duty where burglary resulted because

2  ADT allegedly failed to properly install alarm system and failed to provide notification of

3  alarm signals, since these failures arose from the parties' contractual relationships, not

4  from independent tort duty), aff'd, 475 Fed. Appx. 115 (9th Cir. 2012).                    Here,

5  Simplex argues, its alleged negligent breach of contract cannot create a tort claim.  Simplex

6  entered into a contract with Zak's to expand the sprinkler system and install 200 sprinkler

7  head guards at the UOS facility.  Plaintiffs assert that Simplex was the "design-builder" of

8  the sprinkler system, and that it negligently "designed" the system by failing to provide

9  stronger head guards and/or by failing to recommend that a net be installed.  Simplex

10  argues, however, that plaintiffs' claim is nothing more than a breach of contract claim, and

11  that this case is nothing like Sabella or Stewart because Simplex's work did not cause the

12  property damage.  For example, Simplex contends, if the sprinkler heads were improperly

13  installed and suddenly began leaking, and caused property damage, then Sabella and

14  Stewart might apply.  But, Simplex asserts, that is not what happened.

15       Simplex argues that this case is similar to Valenzuela, because plaintiffs here allege

16  that Simplex failed to properly install a sprinkler system that could withstand a direct hit

17  from a soccer ball, and that this failure allowed a soccer ball to damage a sprinkler head.

18  Simplex asserts that it performed its work pursuant to the contract – and did exactly what it

19  was paid to do (expand the sprinkler system and install 200 head guards).  Simplex

20  contends that to the extent that plaintiffs claim it failed to do this, then Bishop & Bishop or

21  Zak's has a remedy for breach of contract, but, as in Valenzuela, plaintiffs cannot assert a

22  tort claim.

23       Simplex also asserts that the public policy factors make clear that Simplex owed

24  plaintiffs no independent tort duty.  In instances where a bright line cannot be drawn

25  regarding whether the common law imposes a tort duty separate from the parties' contract,

26  California courts look to various public policy considerations.  See Applied Equip., 7 Cal.

27  4th at 514-15; Mintz v. Blue Cross of Calif., 172 Cal. App. 4th 1594, 1610-12 (2009).

28       California courts employ a checklist of factors that they use in assessing legal duty,

United States District Court

For the Northern District of California

1   including "the extent to which the transaction was intended to benefit the plaintiff, the

2   foreseeability of harm to him, the degree of certainty that he suffered injury, the closeness

3   of the connection between the defendant's conduct and the injury suffered, and the policy

4   of preventing further harm."  Stewart, 55 Cal. 2d at 863 (citing Biakanja v. Irving, 49 Cal. 2d

5   647, 649 (1958); see also Sabella, 59 Cal. 2d at 28.  Other factors include the moral blame

6   attached to the defendant's conduct, the extent of the burden to the defendant and

7   consequences to the community of imposing a duty to exercise care with resulting liability

8   for breach, and the availability, cost, and prevalence of insurance for the risk involved.  See

9   O'Neil v. Crane Co., 53 Cal. 4th 335, 364 (2012).

10      Here, with regard to the extent its work was intended to benefit plaintiffs, Simplex

11   argues that its work was primarily intended for the former owners of the building, Bishop &

12   Bishop, and Zak's Enterprises (the general contractor for the remodel).  It was not

13   specifically intended for subsequent owners such as El Capitan.  Moreover, the intent was

14   to provide a fire sprinkler system, not to protect the property from a "six-in-one-million"

15   soccer ball kick.

16      With regard to foreseeability, Simplex contends that it performed the work in 2002-

17   2003, nearly eight years before a soccer ball hit one of the sprinklers and damaged it.

18   Simplex argues that thousands of soccer games were likely played on the field during that

19   eight-year period, and hundreds of thousands of kicks were probably made, until that one

20   extremely rare kick that damaged the sprinkler head.  Moreover, Simplex asserts, the

21   physical structure of the sprinkler heads protected them from direct impacts from soccer

22   balls – the sprinkler heads sat above the two-inch piping – and thus were further protected.

23      Simplex contends that to cause this incident, the soccer ball had to fly at least 25

24   feet in the air, ricochet off the ceiling, avoid the beams, and maintain enough force to sheer

25   off the head guard and the steel sprinkler head.  Simplex argues that there was no way it

26   could have foreseen this type of a soccer ball kick – and that plaintiffs' insureds were in the

27   best position to know the risks posed by errant soccer balls because they watched the

28   activities on the field and knew what sort of players were using the field.  Simplex claims it

United States District Court

For the Northern District of California

1    did not know these things, and that in any event, its last contact with the system was in

2    2003, before UOS had even opened for business.

3        With regard to the degree of certainty of plaintiffs' injury, Simplex argues that no one

4    expected the soccer ball to reach the ceiling, avoid the piping and structural beams, bounce

5    off the ceiling, strike the head, break both the head guard and the sprinkler head, and

6    cause the sprinkler head to discharge water.  Simplex contends that the length of time that

7    passed between the installation of the sprinkler system and the soccer ball kick that caused

8    the damage simply reinforces how remote and uncertain it was.

9        With regard to the closeness of the connection between Simplex's conduct and the

10   injury suffered, Simplex argues that any such connection is extremely tenuous.  Simplex

11   asserts that unlike construction defect cases where work performed (or not performed) by

12   the contractor leads directly to the damages, any damage was caused by an errant and

13   unusual soccer ball kick, not by any work performed in connection with the installation of

14   the sprinkler system.

15       With regard to the factor of moral blame, Simplex argues that its primary goal in this

16   commercial transaction was to provide a product (a fire suppression system) that would

17   save lives in the event of a fire – and that indeed, that is the sole goal of installing a

18   sprinkler system.  Simplex contends that its alleged negligence (failure to provide more

19   protection for sprinkler heads) did not impact the functioning of the sprinkler system, did not

20   risk loss of life, and did not cause damage that was uninsured. Thus, Simplex asserts,

21   there can be no moral blame.

22       With regard to the public policy of preventing future harm, Simplex asserts that the

23   court need not be concerned about those very rare future instances where soccer balls

24   might strike sprinkler heads and cause property damage.  Simplex notes that this is a

25   subrogation case, that no one was injured, and that all of the damage was paid for by

26   insurance.  More importantly, Simplex argues, the societal cost of placing additional liability

27   upon companies that install fire suppression systems outweighs any concern that such a

28   rare event might again occur.

1    With regard to the availability, cost, and prevalence of insurance or other means of

2  protection, Simplex contends that it is undisputed that plaintiffs' insureds purchased

3  insurance covering the damage at issue.  By contrast, Simplex notes, if a homeowner's

4  residence is damaged because of a construction defect, the homeowner may not have

5  insurance to cover its loss.  Here, Simplex argues, the plaintiffs here are sophisticated

6  insurance companies whose business function is to collect premiums to reimburse for

7  damages such as that caused by a "six-in-one-million" soccer kick.  Thus, public policy

8  need not be concerned about providing additional protection for this type of damage.

9    In addition to arguing that it owed plaintiffs no independent tort duty, Simplex

10  contends that the "completed and accepted" doctrine bars plaintiffs' claims.  This doctrine

11  holds that when a contractor completes work that is accepted by the owner, the contractor

12  is not liable to third parties injured as a result of the condition of the work, even if the

13  contractor was negligent in performing the work.  See Sanchez v. Swinterton & Walberg

14  Co., 47 Cal. App. 4th 1461, 1468 (1996).  The rationale for this doctrine is that the owner

15  has a duty to inspect the work and ascertain its safety, and that the owner's acceptance of

16  the work shifts liability for its safety to the owner, provided that a reasonable inspection

17  would have disclosed any defect.  Id. at 1466-68.

18    In Sanchez, the defendants were a general contractor that constructed a building,

19  and a concrete subcontractor that poured walkways, and entrance ramp, a stairway, and a

20  landing at the entrance of the building.  Two years after the construction was completed

21  and had been accepted by the owner, the plaintiff fell on the landing, where there was

22  accumulated rainwater.

23    The court held that the defendants did not owe the plaintiff a duty, even though they

24  had built the structure to benefit visitors like the plaintiff, and even though a slip-and-fall

25  injury was clearly foreseeable, because the owner knew about the water pooling and had

26  taken no precautions (which removed any close connection between the defendants and

27  the plaintiff).  Id. at 1471 (even if the defect could have been considered latent, once it was

28  discovered by the owner, it became patent).

United States District Court

For the Northern District of California

1    Here, Simplex asserts that the former owner of the building – Bishop & Bishop –

2    accepted Simplex's work knowing that the sprinkler system lacked the extra protection of a

3    net.  Simplex also points to the deposition testimony of Aaron Locks, the former owner and

4    president of UOS (and the one who coined the term the "six-in-one-million" kick), who

5    stated that prior to the July 2010 incident, a soccer ball had struck a sprinkler head covered

6    by a head guard, and the sprinkler had discharged water (not as much water as in July

7    2010, "but there was a lot").  Thus, Simplex argues, the building owner also was aware that

8    on at least one other occasion, a stray soccer ball had damaged a sprinkler head, causing

9    some leaking.  Under these facts, Simplex asserts, it cannot be held liable for the incident,

10   where the prior owner and the general contractor knew of and accepted the work, and

11   accepted the risk of errant soccer balls damaging sprinkler heads.

12       In opposition, plaintiffs' first main argument is that Simplex owed them a duty as a

13   matter of law based on its role as the "design-builder" of the sprinkler system.  They assert

14   that Simplex "conceded" that it was the "design-builder," citing to deposition testimony of

15   Simplex's corporate designee.  They contend that under California law, a design-builder

16   assumes a non-delegable duty to design and build the product or structure safely and

17   appropriately, so as to not cause property damage.  The court has reviewed the cases

18   cited by plaintiffs in support of the argument that Simplex owed a duty as a "design-builder,"

19   and finds that those decisions either have no applicability, or are clearly distinguishable on

20   their facts.

21       Plaintiffs first contend that a "design-builder" assumes the responsibilities of a

22   "design professional" and furnishes all services – designing, engineering, constructing –

23   necessary to deliver a completed project for an agreed price.  In support, they cite Thomas

24   v. Buttress & McClellan, Inc., 141 Cal. App. 2d 812 (1956).

25       Thomas was a 1956 decision arising from an action for the recovery of commissions

26   under an oral contract of employment.  The plaintiff was a sales manager for a company

27   (the defendant) that sold "package" or "turnkey" construction jobs, which required the

28   defendant to furnish all engineering and architectural services, supply all labor and

11

United States District Court

For the Northern District of California

1    material, and deliver a completed structure for an agreed price.  Id. at 815.  The plaintiff

2    filed suit because he believed he had not been adequately compensated for his work.  Id.

3    at 815-19.  There is nothing in the opinion relating to the obligations of designers or

4    installers of sprinkler systems, or stating a general rule that a "design-builder" assumes all

5    responsibilities and furnishes all services in connection with a construction project.

6         Second, plaintiffs argue that public policy precludes a "design-builder" from shifting

7    responsibility for structural design defects, code compliance, safety precautions, and

8    supervisory duties to the owner.  In support of this argument, plaintiffs cite Maloney v. Rath,

9    69 Cal. 2d 442 (1968).

10        Maloney was a 1968 decision arising from an action to recover damages for

11   personal and property injury incurred in an automobile accident.  The court held that the

12   duty of an owner and operator of an automobile to maintain its brakes in compliance with

13   the provisions of the Vehicle Code is nondelegable; and that to establish a defense to

14   liability for damages caused by a brake failure, the owner and operator must establish not

15   only that he did what might reasonably be expected of a person of ordinary prudence,

16   acting under similar circumstances, who desired to comply with the law, but also that the

17   failure was not due to the negligence of any agent, whether employee or independent

18   contractor, employed by him to inspect or repair the brakes.  Id. at 446-47.  There is

19   nothing in Maloney relating to the obligations of designers or installers of sprinkler systems,

20   or even stating that design-builders or design professionals owe a "nondelegable" duty.

21        Third, plaintiffs assert that an architect who plans and supervises construction work,

22   as an independent contractor, is under a  duty to exercise ordinary care  for the protection

23   of any person who foreseeably or with reasonable certainty may be injured by his failure to

24   do so, even though such injury may occur after the work has been accepted by the person

25   engaging his services.  In support of this argument, plaintiffs cite Montijo v. Swift, 219 Cal.

26   App. 2d 351 (1963).

27        Montijo was a 1963 decision arising from an action for personal injuries suffered by

28   the plaintiff when she fell while descending a bus depot stairway designed by the defendant

1  architect.  The plaintiff claimed that the stairway was defectively designed, because the

2  handrails did not go all the way to the bottom and the wall tile was laid out in such a way

3  that it appeared that the bottom step was actually the landing.  The jury found in the

4  plaintiff's favor, but the Court of Appeal reversed, finding insufficient evidence to support

5  the claim that the architect was responsible for that portion of the design.

6      The Montijo court stated the general rule that

7      [a]n architect who plans and supervises construction work, as an independent
       contractor, is under a duty to exercise ordinary care in the course thereof for
8      the protection of any person who foreseeably and with reasonable certainty
       may be injured by his failure to do so, even though such injury may occur
9      after his work has been accepted by the person engaging his services.

10  Id. at 353.  The decision does discuss the duty of architects to design structures that are

11  safe – but says nothing about any general duty of design-builders, much less about any

12  duties imposed on designers or installers of sprinkler systems or any other safety or

13  property-protection system.

14      Fourth, plaintiffs contend that the "fiduciary duty of design professionals is long-

15  standing in California."  In support of this argument, they cite Palmer v. Brown, 127 Cal.

16  App. 2d 44 (1954).  Palmer was a 1954 decision arising from an action by two co-partners

17  in an architectural firm to recover $2,190 due for architectural services.  The defendants

18  denied that they owed the money, in part because one of the co-partners was not a

19  licensed architect (although the other one was).

20      The defendants filed a counterclaim, alleging, among other things, fraud, based on

21  the allegation that at the same time that the plaintiffs were receiving compensation for

22  architectural services from the contractor, they were also supervising the contractor's

23  performance on the construction project.  It was in this context that the court stated that

24  "[a]n architect owes to his client a fiduciary duty of loyalty and good faith."  Id. at 59.  While

25  the Palmer decision does discuss certain obligations of architects, it says nothing about any

26  duties of designers or installers of sprinkler systems or any other building-safety or

27  property-protection system.

28      Finally, plaintiffs assert that a design professional's failure to warn of a design defect

United States District Court
For the Northern District of California

1    exposes the professional to negligence liability.  In support of this argument, they cite

2    Mallow v. Tucker, Sadler & Bennett Architects & Engineers, Inc., 245 Cal. App. 2d 700

3    (1966).  Mallow was a 1966 decision arising from an action for wrongful death based on

4    negligence, brought by the heirs of a workman killed when his jackhammer struck a high-

5    voltage transmission line.  The defendant architect had independently contracted with the

6    owner to act as the architect for the construction project (a remodel of a motel).  The

7    architect was accused of negligence for failing to warn of the existence of the high-voltage

8    line – specifically, by not showing it on the plans it prepared for the construction project.

9         The court held that because the architect had failed to include any mention on its

10   plans of the high-voltage line, notwithstanding that those plans called for excavation in the

11   area where the buried electrical line was located, there was a direct progression between

12   the architect's negligence and the death of the workman.  Id. at 702-03.  Again, the

13   Mallow decision addresses the professional duties of architects with regard to creating

14   plans relating to construction, but does not mention any duties owed by designers or

15   installers of sprinkler systems, or any other building-safety or property-protection system.

16        Mid-Century adds the separate argument that "design firms" can be liable to

17   "successors" who could be affected by their work, even if there was no contract between

18   them; that there is an important public policy in favor of protecting purchasers from

19   negligent design; and that both contractors and subcontractors have a duty to perform their

20   work in a good and workmanlike manner, and a subcontractor who is careless and

21   negligent in the performance of its work is liable to the general contractor as well as to third

22   persons for any damage caused.

23        In support, Mid-Century cites a number of cases including Beacon Residential

24   Comm'ty Assoc. v. Skidmore, Owings & Merrill LLP, 211 Cal. App. 4th 1301 (2012), which

25   it asserts is "dispositive."  In that case, a homeowners' association filed suit against two

26   architectural firms (identified by the court as "design professionals"), which had provided

27   architectural and engineering services, as well as construction administration and

28   construction contract management, in connection with the construction of  condominium

14

United States District Court

For the Northern District of California

1  residences.  The plaintiff homeowners alleged that defendants' negligence during the

2  course of the planning and construction resulted in defects such as water infiltration,

3  inadequate fire separations, structural cracks, and other life safety hazards including

4  inadequate ventilation and excessive heat buildup.

5        Mid-Century attempts to extrapolate from the court's ruling regarding the liability of

6  the "design professionals" in Beacon, but as with the other cases cited by plaintiffs

7  regarding the duties of architects, the principles articulated in Beacon do not support an

8  independent tort duty of care with regard to Simplex's installation of the sprinkler system at

9  issue in this case.  In addition, the court notes that two weeks after Mid-Century filed its

10  opposition, the Beacon decision was superceded by the California Supreme Court's order

11  granting review.  See Beacon Residential Comm'ty Assoc. v. Skidmore, Owings & Merrill,

12  2013 WL 718741 (Cal. Feb. 27, 2013).

13        In their second main argument, plaintiffs assert that public policy encourages the

14  protection of fire suppression systems, and that the relevant public policy factors impose a

15  duty on Simplex in addition to its non-delegable duty as a "design-builder."

16        With regard to the extent the transaction was intended to benefit them, plaintiffs

17  argue that as a tenant, UOS had a legal ownership interest in the property; and that the

18  soccer field was built for UOS, not for El Capitan or Bishop & Bishop.  Plaintiffs claim that

19  Simplex was aware of that fact, that it knew what the field was to be used for and by whom.

20  In its separate opposition, Mid-Century adds that a "design professional" attempting to

21  protect sprinkler heads from the potential of catastrophic discharge caused by soccer balls

22  cannot be unaware of the fact that its work will have a direct effect on the integrity, safety,

23  and habitability of the property with respect to both present and future owners and

24  occupants, and that Simplex's argument is directly contrary to the court's holding in the

25  residential construction defect case of Aas v. Superior Court, 24 Cal. 4th 627 (2000)

26  (conduct of person engaged in construction is intended to affect all foreseeable purchasers

27  of property).

28        With regard to foreseeability, plaintiffs contend that the only possible reason for

United States District Court

For the Northern District of California

installing the head guards on the sprinkler heads over the soccer field was to protect the heads from flying soccer balls.  They contend that a design professional's failure to warn of a "design deficiency" exposes the professional to negligence liability (citing Mallow). Plaintiffs argue that in this case, Simplex either installed the sprinkler head guards without any knowledge of their durability, or installed head guards it knew would be "insufficient." Either way, they assert, Simplex breached its duty to warn UOS of the potential harm to its sprinkler heads.

With regard to the degree of certainty of the plaintiffs' injury, plaintiffs contend that the rarity of the kick that caused the ball to hit the sprinkler head is irrelevant.  What is important, plaintiffs argue, is that Simplex installed guards to protect the sprinkler heads, but actually had no knowledge of whether or not the guards would serve that function. Plaintiffs assert that Simplex installed a product that "lulled" UOS "into a feeling of safety" when in fact it was only a matter of time before an impact would cause a water discharge. They also argue that [t]his is not a grocery store where a customer decided to kick a watermelon into the ceiling," but rather an indoor soccer field.  Because the sprinkler discharged due to an impact from a soccer ball, and because Simplex installed head guards over the soccer field, plaintiffs contend that it is obvious that it did so to protect against the very injury that occurred.

With regard to the closeness of the connection between Simplex's conduct and the injury suffered, plaintiffs argue that Simplex's negligence stems from either not knowing if the head guards would be sufficient to protect the sprinkler heads, or from knowing the head guards were not sufficient and installing them anyway.  Plaintiffs reiterate that Simplex's duty to warn was non-delegable (citing Maloney).  They also assert that unlike in Sanchez, where the owner knew about the pooled water, in this case, UOS had no way of knowing that the head guards were insufficient until a soccer ball struck the head guard.

With regard to moral blame, plaintiffs argue that the mere fact that a negligent act may have occurred during a commercial transaction does not mean that the tortfeasor owed no duty to the plaintiff.  They assert that the law creates a fiduciary duty for design-

16

1   builders (citing Palmer).  Plaintiffs contend that Mr. Dluzak relied on this duty and trusted

2   Simplex to safely design and build the sprinkler system, and that Simplex breached this

3   duty by inadequately protecting the sprinkler heads.  Therefore, plaintiffs argue, regardless

4   of whether it was a commercial transaction, Simplex is the only party morally culpable in

5   this situation.

6       With regard to the public policy of preventing future harm, plaintiffs assert that public

7   policy favors "properly designed" sprinklers.  They contend that the activation of a sprinkler

8   system is a serious threat to public safety, because once the sprinkler flow alarm is

9   activated, the occupants are not in a position to know whether the activation is the result of

10  a fire, or in this case, a soccer ball.  They claim that the mass flow of people at or towards

11  fire exits is a serious safety hazard, and that therefore, public policy favors sprinklers that

12  do not activate prematurely.

13      With regard to the availability, cost, and prevalence of insurance, plaintiffs argue that

14  because they issued payments to their insureds, they now stand in the shoes of their

15  insureds with regard to any cause of action the insureds may have had against Simplex,

16  based on the law of subrogation.  Thus, plaintiffs contend, the fact that their insureds "acted

17  responsibly" and purchased insurance does not mean that plaintiffs cannot now seek to

18  recover under a theory of subrogation.

19      In their third main argument, plaintiffs assert that the "completed and accepted"

20  doctrine is inapplicable in this case.  They note that as explained in Sanchez, this doctrine

21  applies to patent defects, not to latent defects.  They suggest that the alleged "defects"

22  were latent because neither UOS nor Bishop & Bishop had any way to inspect the durability

23  and/or protective capabilities of sprinkler head guards that were located high above the

24  soccer field.  More importantly, they argue, Mr. Dluzak, the owner of Zak's, trusted Simplex

25  with the duty to inspect the sprinklers, and had no reason to anticipate that the head guards

26  would be insufficient.  Mid-Century also argues that Sanchez is inapplicable because there

27  is no evidence in this case that both the "defective sprinkler design" and the "hazards it

28  posed" were apparent to El Capitan.

United States District Court
For the Northern District of California

The court finds that the motion must be GRANTED. As an initial matter, the court finds that Simplex did not owe plaintiffs an independent tort duty as a "design builder" – i.e., a general contractor or a design professional such as an architect or engineer. The evidence shows that Simplex accomplished what it was hired to do under its contract with Zak's – install a working fire sprinkler system with the strongest head guards it sold – and that Zak's received what it contracted for. Had the damage to the property resulted from a failure of the sprinkler system to activate during a fire, or from the spontaneous activation of one of the sprinkler heads, the case would be entirely different.

Nor have plaintiffs identified any "duty" that Simplex breached. Plaintiffs appear to be arguing that Simplex should have installed stronger head guards. However, they offer no evidence as to what alternative head guards Simplex could have installed. Simplex offers two types of head guards – the one-piece head guard and the two-piece head guard – and per the contract with Zak's, it installed the two-piece head guards. Without any evidence that stronger head guards existed, and that Simplex knew about them, plaintiffs' claim regarding the "inadequate" head guards fails as a matter of law.

With regard to the suggestion that Simplex had a duty to recommend installation of a protective net, plaintiffs have provided no evidence that Simplex is in the business of selling, designing, or installing protective nets – for that matter, designing soccer arenas. Simplex is a fire sprinkler and fire protection contractor, and its work is limited to designing and installing sprinkler systems for the purpose of life safety and property protection in the event of fire. Simplex offered what was available in the fire protection industry to protect the sprinkler heads and installed a fully functioning fire protection system. It had no duty to recommend a protective net.

Simplex is not a "design professional" and moreover, plaintiffs have not sued Simplex for professional negligence. Simplex was not employed to serve as an architect or an engineer with regard to the construction of the soccer facility. Plaintiffs appear to have created this concept of Simplex as a "design professional" in order to manufacture a duty to support the negligence cause of action. However, plaintiffs have ignored crucial

18

United States District Court

For the Northern District of California

1    distinctions between the construction defect cases they cite and the present case.

2        As the installer of fire protection and sprinkler systems, Simplex is not a "design-

3    builder" or a "design professional" as contemplated by California law, because it is not an

4    engineering or architectural firm.  Architects, engineers, and surveyors may be subject to

5    professional malpractice claims, see Cooper v. Jevne, 56 Cal. App. 3d 860, 868 (1976),

6    and firms of this type are therefore subject (by the California Legislature) to licensing and

7    registration requirements.  See Bus. & Prof.Code §§ 5500 et seq., 6700 et seq.  Indeed, a

8    plaintiff asserting a professional malpractice claim against an architect, professional

9    engineer, or land surveyor is require to file a "Certificate of Merit" at the time the suit is filed.

10   See Cal. Civ. P. Code § 411.35.  Plaintiffs in this case have not done so.

11       Moreover, plaintiffs have not established that public policy supports a finding that

12   Simplex had a common law duty to anticipate the force by which an errant soccer ball might

13   strike a sprinkler head, or that it owed such a duty to the plaintiffs, who are strangers to the

14   contract with Zak's.

15       With regard to the extent to which the transaction was intended to benefit the

16   plaintiffs, and the foreseeability of the harm to the plaintiffs, the intent of the contract

17   between Simplex and Zak's in 2003 was to expand and update the fire sprinkler system, to

18   protect against damage or injury caused by fire – not to protect the property from the "six-

19   in-one-million" soccer ball kick that occurred almost eight years (and thousands of soccer

20   games) after the sprinkler system work was completed.  Had the sprinkler system failed to

21   perform during a fire, this factor might favor imposing a tort duty.  As it is however, it does

22   not.

23       With regard to the degree of certainty that plaintiffs suffered injury, and the

24   closeness of the connection between Simplex's conduct and any injury suffered, there is no

25   evidence that anyone at the time the work was performed anticipated that eight years later,

26   an errant soccer ball would reach the ceiling and damage the head guard and the sprinkler

27   head, and cause the damage.  Moreover, there appears to be no connection between the

28   work Simplex performed pursuant to the contract and the injury suffered.  The damage was

19

United States District Court

For the Northern District of California

1   clearly not caused by Simplex.  These factors do not favor imposing a tort duty.

2        With regard to moral blame and the public policy of preventing future harm, Simplex

3   was retained to provide a fire suppression system that would save lives in the event of a

4   fire, and there is no evidence that it failed to do so.  It's alleged negligence (failure to

5   provide stronger sprinkler heads and/or failure to recommend that a net be installed) did not

6   impact the functioning of the sprinkler system and did not result in any loss of life.  Thus,

7   this factor also does not favor imposing a tort duty.

8        With regard to the availability, cost, and prevalence of insurance or other means of

9   protection, the court notes that a key consideration for declining to extend a tort duty in

10  Bily was that the plaintiffs – who were sophisticated investors, not powerless consumers –

11  had the ability to protect their interests through other means.  Here, the plaintiffs are

12  subrogated insurance companies that paid El Capitan and UOS for all of their damages.

13       Moreover, UOS and El Capitan could have allocated the risk of loss to the prior

14  owner, the architect, or the general contractor, or could have protected themselves by

15  hiring a company to install a net after they observed water leaking from another sprinkler

16  head that had been hit by a soccer ball.  But, they chose not to, and were completely

17  compensated by their insurance companies (to whom they had paid premiums to

18  underwrite the risks associated with operating an indoor soccer facility).  Thus, this factor

19  does not favor imposing a tort duty.

20       Finally, the court finds that the "completed and accepted" doctrine bars plaintiffs'

21  claims.  Plaintiffs argue that the alleged defects were "latent," but the evidence shows that

22  there was at least one prior occasion when a sprinkler head guard was damaged by a flying

23  soccer ball.  Moreover, the fact that there was no net protecting the sprinkler system would

24  have been obvious to anyone who looked up at the ceiling of the UOS soccer facility.

25  Thus, any damage caused by the lack of a net is therefore the responsibility of Bishop &

26  Bishop, which accepted Simplex's work.

27       For the "completed and accepted" doctrine to apply, the alleged "defect" simply has

28  to be discoverable.  See Neiman v. Leo A. Daly Co., 210 Cal. App. 4th 962, 970 (2012).

1  Plaintiffs have provided no evidence that the alleged defect (the lack of a net or the type of

2  head guard used) was undiscoverable.  While plaintiffs provide a lengthy list of all the

3  things Simplex supposedly failed to do, they have not established that the failure to do any

4  of these things created a duty to do them.  Simplex had a contract to install a fire sprinkler

5  system and 200 head guards, and it did just that.  It had no duty to anticipate the "six-in-

6  one-million" soccer ball kick that penetrated the head guard and broke the sprinkler head.

7        It bears repeating that there is no allegation or proof that the sprinkler system

8  installed by Simplex was defective in that it failed to protect against fires.  The purported

9  "negligent design" claim is a claim that Simplex should have designed a system that

10 included stronger head guards and/or a net, but there is no evidence that stronger head

11 guards were available, and Simplex does not sell or install nets (which in any event are not

12 normally part of a sprinkler system).

13       Most importantly, plaintiffs have provided no evidence that Simplex was an expert on

14 designing indoor soccer facilities.  The fact that Simplex may have known the facility was

15 going to be used for indoor soccer does not mean that Simplex had a duty as a "design-

16 builder" of indoor soccer facilities.  The sprinkler head was damaged by an outside force –

17 the errant soccer ball – and there is no evidence that the design of the sprinkler system

18 caused the damage to the building.

19                                    **CONCLUSION**

20       In accordance with the foregoing, the court finds that defendant's motion for

21 summary judgment must be GRANTED.

22

23 **IT IS SO ORDERED.**

24 Dated: March 29, 2013

25                                    _____
                                      PHYLLIS J. HAMILTON
26                                    United States District Judge

27

28